UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| *In re*: | ) | Case No.: 1:10 CV 240 |
| | ) | |
| WILLIAM D. HALL, | ) | Appeal from Order in Chapter 11 Proceedings |
| | ) | Case No.: 09-BR-18448 |
| Debtor-Appellant | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| HUNTINGTON NATIONAL BANK, | ) | |
| | ) | |
| Creditor-Appellee | ) | <u>ORDER</u> |

Appellant William D. Hall ("Appellant-Debtor" or "Hall") hereby appeals, pursuant to 28 U.S.C. § 158(a) and (b), the oral judgment of the United States Bankruptcy Court for the Northern District of Ohio ("Bankruptcy Court") on December 15, 2009, wherein the Bankruptcy Court granted the Appellee, Huntington National Bank ("Appellee-Creditor"), relief from stay and abandonment as to real property commonly known as 4820-4836 Lee Road, Cleveland, OH 44128 (Parcel Nos. 143-03-018, 143-03-019, 143-03-066, 143-03-067, 143-03-068, and 143-03-069) (the "Premises" or "Cameron Gardens"). (Appeal From Bankruptcy Order, ECF No. 1-1.) For the reasons stated herein, the court affirms the judgment of the Bankruptcy Court and dismisses Hall's appeal.

**I. PROCEDURAL HISTORY**

On September 7, 2009, Appellant-Debtor filed a voluntary Chapter 11bankruptcy petition with the Bankruptcy Court. (Petition, Bankr. Ct., ECF No. 1-2.) D & E Leasing Company ("D & E Leasing"), an Ohio partnership of which Appellant-Debtor is the General Partner, also filed for protection under Chapter 11 on the same day. On September 16, 2009, Appellee-Creditor filed a Motion for Relief From Stay and Abandonment. On October 27, 2009, Appellee-Creditor requested an evidentiary hearing on the Motion. This hearing was held on December 9, 2009. Much of the testimony focused on whether the quitclaim deed recorded on June 20, 2005, effectively transferred ownership of the apartments from Hall to D & E Leasing. On December 15, 2009, the Bankruptcy Court issued an oral ruling granting Appellee-Creditor's Motion as to D & E Leasing, and to Appellant-Debtor, to the extent he is a guarantor. This ruling allowed Appellee-Creditor to commence foreclosure, seek the appointment of a receiver, and otherwise pursue liquidation of its collateral, once the automatic stay of the order had expired, but Appellee-Creditor could not take action against Hall in his individual capacity beyond the entry of a money judgment. On December 23, 2009, Appellant-Debtor and his wife, Virginia Hall, filed a Motion for Reconsideration.[1] A Motion for Reconsideration was filed simultaneously on behalf of D & E Leasing. On January 7, 2010, Appellant-Debtor and his wife filed a Motion to Re-Open the Evidentiary Hearing Held on December 9, 2009. On January 21, 2010, the Bankruptcy Court issued a Memorandum of Opinion and Order denying Appellant-Debtor's Motions. Inasmuch as the Motion was brought within ten days, the Bankruptcy Court stated that it should be viewed as a Motion to Alter or Amend Judgment under Rule 59(e) of the Federal Rules of Civil Procedure. On

---

[1] Appellant-Debtor's wife, Virginia L. Hall, was a party in case no. 09-BR-18448, but was dismissed from the case on January 12, 2010.

-2-

February 2, 2010, Appellant-Debtor filed his Notice of Appeal of the Bankruptcy Court's oral ruling of December 15, 2009, granting Appellee-Creditor's Motion for Relief From Stay. (Appellant-Debtor Br. at 4-5, ECF No. 6.)

Appellant-Debtor asserts the following three arguments on appeal:

> I. James Berry, an agent of Appellee-Creditor was not qualified to provide expert testimony regarding the ownership of Cameron Gardens at the December 9, 2009, evidentiary hearing.
>
> II. The quit claim deed executed by Appellant-Debtor William D. Hall and his spouse, Virginia L. Hall, on June 13, 2005, did not transfer title to parcel nos. 143-03-066, 143-03-067, 143-03-068, and 143-03-069 of Cameron Gardens from Appellant-Debtor William D. Hall to D & E Leasing Company.
>
> III. On June 16, 2005, Appellant-Debtor William D. Hall, as an individual, and natural person, did not execute any mortgage against Cameron Gardens or any other real estate in which he had an interest for the $800,000 borrowed by D & E Leasing Company.

(Appellant-Debtor Br. at 3.)

## II. FACTUAL BACKGROUND

The facts underlying this dispute are laid out comprehensively in the Bankruptcy Court's January 21, 2010 Order denying Appellant-Debtor's Motions and as they relate to this Appeal are as follows:

> In October of 2002, Hall executed a note ("Note 1") and open-end mortgage with Metropolitan Bank, as well as an assignment of rents. In June of 2005, Hall executed a note with Sky Bank, in the sum of $800,000 ("Note 2"). Hall also signed a quitclaim deed conveying his interest in property to D & E Leasing, which was recorded on June 20, 2005. In addition, D & E Leasing executed a mortgage securing Note 2, which was recorded on June 20, 2005. Huntington Bank is the successor in interest to both Metropolitan Bank and Sky Bank. On August 11, 2009, Huntington Bank obtained a judgment in state court in the amount of $459,365.00 plus interest on Note 1, and $796, 485.15 plus interest on Note 2. The judgment against Hall was for both notes,

>while the judgment against D & E Leasing was for Note 2 only.
>
>In response to Huntington Bank's efforts to initiate foreclosure proceedings and have a receiver appointed to collect rent payments, D & E Leasing and Hall filed petitions under Chapter 11 on September 7, 2009.

(Bankr. Ct. Mem. of Opinion and Order at 2-3, Case No.: 09-BR-18448, ECF No. 118.)

### III. STANDARD OF REVIEW

Jurisdiction to hear appeals from the bankruptcy court is conferred by 28 U.S.C. § 158. In appeals from the bankruptcy court, this court sits as an appellate court, reviewing the bankruptcy court's findings of fact under a clearly erroneous standard, but conducting a *de novo* review of the bankruptcy court's conclusions of law. FED. R. BANKR. P. 8013; *see also In re Kenneth Allen Knight Trust*, 303 F.3d 671 (6th Cir. 2002); *Harbour Lights Marina v. Wandstrat*, 153 B.R. 781 (Bankr. S.D. Ohio 1993). The bankruptcy court's rulings on evidentiary issues are reviewed for an abuse of discretion. *See In re Shekerjian*, No. 09-14708, 2010 WL 1417782, at *5 (E.D.Mich. 2010) (citing *Hill v. Marshall*, 962 F.2d 1209, 1214 (6th Cir. 1992)). If a district court must review a mixed question of fact and law, "then [it] must break it down into its constituent parts and apply the appropriate standard of review for each part." *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993).

### IV. LAW AND ANALYSIS

**A. Did the Bankruptcy Court err by qualifying James Berry as an expert witness to testify on behalf of Appellee-Creditor at the evidentiary hearing on the amended motion for relief from stay and abandonment?**

The court reviews this issue for abuse of discretion, since it pertains to the Bankruptcy Court's ruling on an evidentiary issue. The Bankruptcy Court qualified James Berry ("Berry") as an expert, and allowed him to testify on behalf of Appellee-Creditor following a proffer of his

qualifications in open court. Appellant-Debtor argues that Appellee-Creditor failed to comply with the disclosure requirements of FED. R. CIV. P. 26(a)(2) when it provided an expert report, the Preliminary Judicial Report and Title Search, regarding the title or ownership of the Premises. (Appellant-Debtor Br. at 10.) Appellant-Debtor also maintains that the Judicial Report failed to comply with the Bankruptcy Court's Evidentiary Hearing Order of October 30, 2009, which incorporates Fed. R. Civ. P. 26(a)(2). (*Id.* at 14.) Specifically, Appellant-Debtor states that the report did not contain required information such as the witness' qualifications, publications authored in the last ten years, or a list of cases the witness had testified in during the previous four years as an expert at trial or deposition. (*Id.*)

At the hearing, Berry testified that D & E Leasing was the titled owner of Cameron Gardens. (*Id.* at 6.) Appellant-Debtor contends that allowing this testimony was particularly problematic, given that Appellant-Debtor presented credible conflicting evidence regarding title or ownership. (*Id.*) Appellant-Debtor contends that he was prejudiced by the testimony of Berry, and the refusal of the Bankruptcy Court to reopen the evidentiary hearing for purposes of clarifying the issue of title and ownership of parcel nos. 143-03-066, 143-03-067, 143-03-068, and 143-03-069. (*Id.*)

Appellee-Creditor argues that its omissions relevant to the mandatory disclosures were harmless. (Appellee-Creditor Br. at 11, ECF No. 8.) It provided Appellant-Debtor with notice that Berry would be called as an expert witness and a preliminary judicial report, in compliance with an order of the Bankruptcy Court, that it would use as an exhibit at the evidentiary hearing. (*Id.*) Appellee-Creditor maintains that these disclosures were made in compliance with the scheduling Order of the Bankruptcy Court. (*Id.*) It argues that it substantially complied with the scheduling

Order of the Bankruptcy Court by disclosing the identity and subject matter of its expert witness. (*Id.* at 12.)

Further, the Appellee-Creditor argues that the Bankruptcy Court allowed Berry to detail his qualifications in open court in response to Appellant-Debtor's Motion *in Limine*, and subsequently determined that Berry was in fact qualified to testify as an expert for Appellee-Creditor. (*Id.*) The Bankruptcy Court initially determined that a lot of the potential testimony from Berry would not involve expert opinions within the scope of Rule 26(a)(2), and therefore the Motion in *Limine* was not actually relevant to the non-expert portions of the testimony since it only addressed expert opinions and reports. (Bankr. Ct. Dec. 15, 2009 Tr. at 10.) The Bankruptcy Court chose to withhold its ruling on the Motion in *Limine* regarding expert testimony. During the course of the proceedings, Appellant-Debtor's counsel was allowed to inquire of Berry's qualifications through voir dire. (*Id.* at 27-33.) The Bankruptcy Court found that Berry was qualified as an expert based on this testimony. (*Id.* at 36-37.) The Bankruptcy Court concluded that any omissions, such as the failure to provide information on his prior opinion testimony, were not prejudicial, since they would not have been beneficial to opposing counsel or helpful to the court. (*Id.* at 37-38.) The Sixth Circuit has held "that where a judge has determined that testimony is otherwise admissible, the mere fact that the party seeking its introduction has not fully complied with pretrial orders does not mandate its exclusion. . . ." *Taylor v. Teco Barge*, 517 F.3d 372, 379 (6th Cir. 2008) (internal citation omitted). Therefore, the Bankruptcy Court properly permitted Berry's testimony, and did not abuse its discretion.

Appellant-Debtor also raises additional reasons why the Bankruptcy Court should not have qualified Berry as an expert. Appellant-Debtor takes issue with Berry being permitted to testify and

-6-

give his opinion on whether the delivery of the deed by Appellant-Debtor to Sky Bank effectuated the transfer of permanent parcel nos. 143-03-066, 143-03-67, 143-03-068, and 143-03-069, from himself to D & E Leasing, which were "issues and facts clearly outside of the **Judicial Report**." (emphasis in original) (Appellant-Debtor Br. at 12.) Appellant-Debtor provides no support on how the Bankruptcy Court erred in this regard. However, the court notes that Appellant-Debtor's counsel did object on this basis, and the court sustained the objection. (Bankr. Ct. Dec. 15, 2009 Tr. at 75-76.) Appellant-Debtor's counsel also questioned Berry on this issue during cross-examination, and Berry agreed that on the public record, "on the date that the mortgage was actually executed, the fact of the matter is that the property being mortgaged had not been transferred to D & E Leasing at that time." (*Id*. at 81.) Therefore, Appellant-Debtor's concerns were adequately addressed through the Bankruptcy Court's sustaining of Appellant-Debtor's counsel's objection, as well as through his questioning on cross-examination, and the Bankruptcy Court did not abuse its discretion by allowing such testimony.

Appellant-Debtor also argues that Berry's testimony should have been excluded because he had a financial interest in the issue regarding which he testified. His firm, Lawyers Title Insurance Corporation, would have potentially been liable for $1,100,000 to Appellee-Creditor, had the court determined the title was not in D & E Leasing. (Appellant-Debtor Br. at 14.) However, any potential bias of Berry goes to the weight of the evidence, and not its admissibility. *See Communities for Equity v. Michigan High School, Athletic Ass'n*, No. 1:98-CV-479, 2007 WL 5830967, at *3 (W.D. Mich. May 2, 2007). Appellant-Debtor was free to question Berry about his perceived bias, or any other arguments presented in the Motion in *Limine*. *Id*. Courts have also stated that cross-examination provides the fact finder with a basis to determine a witness' credibility

as to their bias. *See U.S. v. Kelso*, No. 3:06-CR-147, 2009 WL 454968, at *3 (E.D. Tenn. Feb. 23, 2009). Therefore, the Bankruptcy Court did not abuse its discretion in allowing Berry's testimony.

The court notes that Appellant-Debtor also makes reference to the Judicial Report not being prepared specifically for the proceedings before the Bankruptcy Court. (Appellant-Debtor Br. at 14.) However, Appellant-Debtor fails to state how the Bankruptcy Court erred by allowing Appellant-Creditor to rely on such a report in support of its expert's testimony. Further, when Appellant-Debtor's counsel was inquiring of Berry's qualifications during the voir dire examination, Berry verified that this report was not specifically authored for those proceedings, but for proceedings in Common Pleas Court. (Bankr. Ct. Dec. 15, 2009 Tr. at 31-32.) Therefore, if Appellant-Debtor's claim is that the Bankruptcy Court was unaware that this report had not been authored for the specific proceeding before it, the record demonstrates that is not the case. To the extent Appellant-Debtor seeks to assert any other arguments, he fails. Perfunctory and undeveloped arguments by appellants are waived on appeal. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *see also General Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,* 289 F.3d 434, 441 (6th Cir. 2002) (finding a conclusory argument without any further discussion or citation to authority is waived on appeal). Therefore, as Appellant-Debtor has failed to develop this argument on this point it must be deemed as waived.

Upon review, the court agrees with the Bankruptcy Court, and concludes that it did not abuse its discretion by qualifying Berry as a witness. Further, any possible error made by Appellee-Creditor in omitting information in its Expert Report was harmless, since there was substantial compliance, as demonstrated by the prior disclosure of Berry's identity and the subject matter of his testimony. Even if the error were not found to be harmless, the Bankruptcy Court adequately

remedied the omissions and any potential disadvantage to Appellant-Debtor, by inquiring of Berry's qualifications in open court, and giving Appellant-Debtor's counsel an opportunity to contest his qualifications. Appellant-Debtor was also given an opportunity to voice his objections to Berry's testimony, as raised in his Motion in *Limine*. Accordingly, the Bankruptcy Court did not abuse its discretion by qualifying Berry as an expert witness.

**B. Did the Bankruptcy Court err by determining that the quit claim deed executed by Appellant-Debtor and his spouse on June 13, 2005, transferred title to all of the parcels of Cameron Gardens from Appellant-Debtor to D & E Leasing?**

The court reviews this issue *de novo*, as determining whether the deed was properly executed pursuant to Ohio Revised Code § 5301.01(A), is a question of law. Appellant-Debtor argues that the deed executed by him and his wife on June 13, 2005,was not executed in accordance with § 5301.01, and therefore it was defective and did not pass title to parcel nos. 143-03-066, 143-03-067, 143-03-068, and 143-03-069 from him to D & E Leasing. (Appellant-Debtor Br. at 15.) He also contends the deed is defective because it does not contain the complete legal descriptions of the parcels that make up Cameron Gardens, and because it states it was prepared by his attorney, Stanley Jackson ("Jackson "), though Appellant-Debtor and Jackson maintain that Jackson did not prepare it. (*Id*. at 10-11.)

After the evidentiary hearing, Appellant-Debtor contends his counsel "discovered irregularities in the closing, and evidence that the June 13, 2005 Deed was improperly executed." (*Id*.) Appellant-Debtor contends that in his Motion for Reconsideration, he provided proof through sworn affidavits of himself and his wife, that "he and his wife signed the June 13, 2005 Deed outside the presence of a notary public who falsely certified that both the Appellant-Debtor and his wife appeared before her. The Affidavits state that the Deed was not signed by them either, individually

-9-

or jointly in the presence of the notary public." (*Id*. at 16.) Appellant-Debtor also indicates that he included a fax cover sheet used to transmit the deed with his Motion for Reconsideration, which Appellant-Debtor asserts, "makes crystal clear that Virginia Hall was not in the presence of the notary when she signed the deed." (*Id*.) Appellant-Debtor maintains that this proves the deed was not executed in accordance with § 5301.01(A), and on that basis alone is defective, and could not have transferred any of the parcels from him to D & E Leasing. At best, he contends, D & E has no more than an equitable interest, which makes the mortgage a nullity. (*Id*. at 17.)

Upon review, the court finds that the Bankruptcy Court did not commit legal error. In his ruling denying the Motion for Reconsideration, Bankruptcy Judge Arthur Harris stated that all of the property at issue was effectively transferred from Hall to D & E Leasing under Ohio law. (Appellee-Creditor Brief at 14.) After a careful examination of the applicable law and the parties' filings, this court finds the deed was properly executed for the purposes of transferring all of the parcels of property from Appellant-Debtor to D & E Leasing. Section 5301.01(A) states:

> (A) A deed, mortgage, land contract as referred to in division (A)(2)(b) of section 317.08 of the Revised Code**,** or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement [sic] and subscribe the official's name to the certificate of the acknowledgement [sic].

While, as Appellant-Debtor points out, § 530.01(A) does state that the deed needs to be acknowledged by the notary, Ohio courts have consistently stated that "[a] defectively executed

-10-

conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud." *Citizens Nat'l v. Denison*, 133 N.E.2d 329, 332 (1956). Appellant-Debtor makes no claims that he and his wife were fraudulently induced to sign and transfer their property. He only takes issue with the fact that the deed was not signed by the Appellant-Debtor or his wife, individually or jointly, in the presence of the notary. (Appellant-Debtor at 16.) Thus, Appellant-Debtor may not now invalidate the transfer of the property to escape the effects of his and his wife's intention, to transfer the property to D & E Leasing. *See Logan Gas Co. v. Keith, et al.,* 158 N.E. 184, 186 (1927). As the court stated in *Basler v. Multicare, Inc.,* No. 98-G-2201, 1999 WL 1073800, at *3 (Ohio App. Nov. 19, 1999), "[a] failure to comply with the provisions of R.C. 5301.01 can result in inability to pass 'legal title' as that term is defined in the context of affording notice of recordation of the conveyance to creditors and subsequent purchasers. Nevertheless, as between the grantor and grantee, the deed is valid, despite a defective acknowledgment." *See also Citizens Nat'l Bank*, 133 N.E. 2d at 332; *Seabrooke v. Garcia*, 454 N.E.2d 961 (Ohio App. 1982). The reasoning behind this rule is to "bind the parties to that which they intended." *Seabrooke*, 454 N.E.2d at 964. The *Seabrooke* court further stated "[t]he purpose of the acknowledgment statute (R.C. 5301.01) is to provide evidence of execution and authority for recordation. It is not to provide a way for a party who later wishes to renege on an agreement." *Id*. The clear intention of Appellant-Debtor and his wife was to execute a valid quit claim deed transferring the property to D & E Leasing, and without any allegations or proof of fraud, as between the parties, the deed is valid.

Appellant-Debtor maintains that the deed is also defective because his attorney, Stanley Jackson, did not prepare the deed, although it has his name on it. (Appellant-Debtor Br. at 10-11.) Appellant-Debtor states that he can substantiate his claim through an affidavit from his attorney.

-11-

He has neither included the deed, nor the affidavit with his filings. As explained above, in the absence of fraud, a deed between grantee and grantor is presumed valid. Therefore, since there have been no allegations that Appellant-Debtor and his wife were fraudulently induced to sign and transfer the property, the deed must be presumed to be valid.

Additionally, Appellant-Debtor contends that the deed failed to contain the complete legal descriptions of the six parcels that make up Cameron Gardens, and therefore the deed must be defective on this basis also. However, as stated above, the deed has not been provided. Appellant-Debtor also fails to state how the legal description is incomplete. Perfunctory and undeveloped arguments by appellants are waived on appeal. *Berkowitz*, 927 F.2d at 1384: *General Star Nat'l Ins. Co.,* 289 F.3d at 441. Therefore, as Appellant-Debtor has failed to develop this argument on this point it must be deemed as waived. Accordingly, the court finds the deed is valid, and the court affirms the Bankruptcy Court's ruling.

Although Appellant-Debtor does not provide any explanation as to how the deed lacks a complete legal description, the court notes that after determining that the deed was valid, the Bankruptcy Court found D & E Leasing to be the record owner of all six parcels of the Premises, despite an error on the part of the County Auditor. (Bankr. Ct. Dec. 15, 2009 Tr. at 10-12.) The Auditor had failed to include four of the six parcels initially, but later recognized this error, and fixed it without a refiling of the deed. (*Id.*) Only parcel nos. 143-03-018 and 143-03-019 had been listed as transferred to D & E Leasing. (Appellant-Debtor Br. at 7.) The records of the Recorder's and Auditor's Offices showed that Appellant-Debtor was the titled owner of parcel nos. 143-03-066, 143-03-067, 143-03-068, and 143-03-069. Witness, Ron Mack of the Cuyahoga County Recorder's Office, testified that this is a type of error that can be fixed without refiling. (Bankr. Ct. Dec. 15,

2009 Tr. at 10.) The Bankruptcy Court found all six parcels to be owned by D & E Leasing, and that the mistake by the Auditor did not prevent the title from transferring. (*Id*. at 10-12.) As the court indicated in *In re Bunn*, 578 F.3d 487, 489 n.3 (6th Cir. 2009), as long as there is another instrument that exists, an informal description will suffice to transfer title. Here, the only thing missing was the Auditor's transfer sticker, transferring all six of the parcel numbers at the time of the recording, and the "six permanent parcel numbers and the complete metes and bounds legal description were on the deed." (Bankr. Ct. Dec. 15, 2009 Tr. at 11-12.) Appellant-Debtor has not shown that the Bankruptcy Court erred in this regard. He only makes a conclusory assertion that the deed did not contain the complete legal description without providing any discussion or citations to any legal authority in support of this claim.[2] The Bankruptcy Court stated that the deed contained the correct legal description, and there was only an issue with the recording by the Auditor's Office, which was sufficient to transfer title, according to *Bunn*, because the deed contained the formal description. Therefore, the title to all six parcels was transferred, and the court affirms the Bankruptcy Court's ruling.

In any event, Appellee-Debtor cannot challenge his own transfer of the property. Here, the Appellant-Creditor has not made any claim that the deed was not validly executed. At a bare minimum, D & E Leasing has an equitable interest in the property. The Bankruptcy Court did not have to determine the validity of the deed, and whether or not D & E Leasing has an equitable

---

[2] Within Appellant-Debtor's fact section, he alleges that the Auditor's Engineers at the Cuyahoga County Auditor's Office told his counsel that the title for the four parcels was inadvertently changed to D & E Leasing after the quit claim deed was brought to the attention of the Auditor's Office on December 4, 2009. (Appellant-Debtor Br. at 8.) Appellant-Debtor cites to affidavits from counsel in support of this claim, but fails to provide these affidavits.

interest in the Premises. This issue was not dispositive because it is clear in any event that there are no allegations that any of the parties engaged in fraud, and as between the parties, the deed is valid. Therefore, Appellee-Debtor does not have standing to attack the transfer he made.

Appellant-Debtor also contends that because D & E Leasing holds no more than an equitable interest, the mortgage is a nullity. However, courts have held that a grantee holding an equitable interest in the property can grant a mortgage on its interest. *See e.g., In Re Scott*, 424 B.R. 315, 331 (Bankr. S.D. Ohio 2010) (under Ohio law, persons who hold equitable interests in real property may grant mortgages on the property even if they do not hold legal title); *Albright v. Meredith*, 50 N.E. 719 (Ohio 1898) ("In order to support a mortgage, it is not necessary that the mortgager shall be the absolute owner of the property mortgaged"); *Wright v. Franklin Bank*, 51 N.E. 876 (Ohio 1898) ("A mortgage upon an estate, or any interest therein, legal or equitable, to be valid as against third persons, must be signed, acknowledged, witnessed, and recorded..."); *In Re Willingham*, 139 B.R. 670, 673 (Bankr. N.D.Ohio 1991) (holding that the owner of an equitable interest in property in the form of a land contract can grant a mortgage on that interest under Ohio law). Therefore, D & E Leasing placed a valid mortgage on the property, even if it only holds an equitable interest, and the court affirms the Bankruptcy Court's ruling.

### C. Did the Bankruptcy Court err by finding that Appellant-Debtor, executed a mortgage against Cameron Gardens or any other real estate in which he had an interest for the $800,000 borrowed by D & E Leasing in favor of Appellee-Creditor?

Appellant-Debtor argues that the deed was defective pursuant to § 5301.01, and that "because Cameron Gardens remained titled to him, as an individual, and natural person, he had no legal authority to execute the $800,000.00 mortgage as the General Partner of D & E Leasing. As a result, there can be no dispute that the $800,000.00, June 16, 2005, Open-End Mortgage is not a

-14-

valid mortgage/lien against Cameron Gardens." (Appellant-Debtor Br. at 17.) The court has already stated above, that the property was transferred to D & E Leasing, and at a minimum, it had an equitable interest, which can still enable D & E Leasing to place a valid mortgage on the property. Therefore, Appellant-Debtor's arguments that he could not take out a mortgage because the property remained titled to him is unavailing, and the court affirms the Bankruptcy Court's ruling on this issue.

In addition, Appellant-Debtor contends that the Bankruptcy Court "erred in finding that Appellee-Creditor had a secured debt on the premises in excess of $1.2 million." (Appellant-Debtor Br. at 17.) He "[a]cknowledges that the Cognovit Guaranty he signed guaranteed payment of D & E Leasing's debt in the amount of $800,000.00. However, Appellant-Debtor contends that the Cognovit Guaranty was and is not secured by any real or person [sic] property owned by Appellant-Debtor and as such may be properly classified as an unsecured claim. . . ." (*Id*. at 6, 18.) Appellant-Debtor maintains that at best, Appellee-Creditor has a secured claim in the amount of $459, 365.00, with respect to both the 2002 and 2005 transactions related to Cameron Gardens, and an unsecured claim of $763,365.00. (*Id*. at 17.) This argument appears to be based on his prior argument that D & E Leasing had no interest in the Premises, and therefore there cannot be a secured debt on it based on D & E Leasing's mortgage. This argument has already been addressed above. To the extent Appellant-Debtor seeks to assert something different, his argument cannot be gleaned from the record before the court. He fails to include any of the documents he cites to in support of this claim, or provide any discussion or factual support on how the claim was improperly classified as a secured claim. The court in *In re Meyer*, 197 B.R. 277, 280 (N.D. Ill. 1996), stated that "[a] party urging this court to reverse a bankruptcy court's judgment must explain why the court should reverse

the judgment, and present legal authority in support of its arguments." (internal citations omitted.) Therefore, as Appellant-Debtor provides no legal or factual support for his argument that the Bankruptcy Court erred in determining Appellee-Creditor had a secured debt on the premises, this argument must be waived.

## V.  CONCLUSION

For the foregoing reasons, the court affirms the decision of the Bankruptcy Court to grant the Appellee-Creditor's Amended Motion for Relief From Stay and Abandonment.

IT IS SO ORDERED.

/s/SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 29, 2011